[Crim. No. 39472. Second Dist., Div. Two. Apr. 3, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES PATRICK PENDLETON, Defendant and Appellant.

414

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Richard Avila, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COMPTON, Acting P. J.**—During a 10-day period between September 29 and October 9, 1979, this defendant, along with various accomplices, committed a series of armed robberies. In each instance defendant was armed with a shotgun.

In a robbery of a bar committed on October 6, defendant and his accomplice, one Robert Tanner, were both armed with shotguns. Each used his weapon to menace the customers and employees in the bar. While defendant was removing $27 from the cash register, Tanner shot and killed one of the customers who disobeyed an order to stand still.

On October 29, 1979, a deputy sheriff attempted to apprehend defendant and Tanner. Defendant shot the deputy in the face with the shotgun. The deputy survived but was blinded in one eye.

A jury found defendant guilty of a count of first degree murder, five counts of robbery, one count of attempted robbery, one count of kidnaping for robbery and one count of assault with a deadly weapon on a peace officer.

The charge of first degree murder was predicated on the felony-murder doctrine and defendant's role as a coparticipant in the armed robbery where the killing occurred.

The jury also found the existence of special circumstances in that the murder occurred during the commission of a robbery and, as required by the court's instruction, that defendant "intentionally aided and abetted in the commission of a first degree murder." Although the instruction was requested by defendant, he did not testify and offered no evidence on this issue.

At the penalty phase defendant again did not testify. The jury imposed the penalty of life without possibility of parole. Defendant appealed, contending, inter alia: (1) that the trial court erred in denying his motion to quash the jury venire; (2) that the felony-murder doctrine was unconstitutional; and (3) that to find the existence of special circumstances the jury must first, under proper instructions, find that defendant intended a killing

by either himself or his accomplice. Defendant urged there was no evidence that he intended the victim be killed.

On August 16, 1982, over two and one-half years ago this court rejected defendant's contentions and affirmed the judgment. Our Supreme Court granted a hearing. Subsequently on December 12, 1983, it filed its opinion in *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], holding that a finding of special circumstance based upon a killing in the perpetration of one of certain specified felonies, requires an intent to kill on the part of defendant regardless of whether he or she was the killer or an accomplice. By implication the court concluded that an instruction such as was given here would be inadequate since it would, as a result of the felony-murder rule, permit a finding of special circumstance on the basis of *intentionally aiding the underlying felony.*

In *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], it was determined that *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, would apply retroactively to all cases not yet final. It was further held that failure to instruct the jury on the need for the prosecution to prove an intent to kill in addition to the intent to commit the underlying felony would constitute reversible error except in very limited circumstances.

Prior to the foregoing decisions, our high court had held in *People* v. *Williams* (1981) 30 Cal.3d 470 [179 Cal.Rptr. 443, 637 P.2d 1029], that a trial court retain jurisdiction under Penal Code section 1385 to strike or dismiss a special circumstance finding.

At the time the Supreme Court issued its opinion in *Carlos* and *Garcia,* the instant case was pending before that court. By an order dated February 4, 1985, however, it was ordered transferred back to us with directions to reconsider our previous decision in light of *Carlos, Garcia* and *Williams, supra.* The court further directed us to reconsider the decision in light of *People* v. *Cantu* (1984) 161 Cal.App.3d 259 [207 Cal.Rptr. 460].

■ We first consider defendant's contention that he was denied his constitutional right to have a jury drawn from a fair cross-section of the community and thus, under the court's holding in *People* v. *Harris* (1984) 36 Cal.3d 36 [201 Cal.Rptr. 782, 679 P.2d 433], is entitled to an automatic reversal of his conviction.

In *Harris,* as in the instant case, the defense moved to quash the jury venire on the ground that the use of voter registration lists as a sole source for the jury pool in Los Angeles County resulted in the systematic exclusion

of blacks and Hispanics.[1] In opposing the motion, the prosecution argued that the defendant's statistical showing was deficient as being based on total population figures rather than more refined data showing the ethnic breakdown of those eligible to serve as jurors. The trial court denied the motion, finding that the defense had failed to establish a prima facie case in support of the allegation that the jury was not drawn from a representative cross-section of the community. The matter proceeded to trial and the defendant was found guilty of murder and sentenced to death.

On appeal, the Supreme Court held that the defendant's statistical evidence, based on total population figures, was sufficient to make a prima facie showing that the fair cross-section rule had been violated. The court further held that once such a showing has been established, the burden shifts to the prosecution to come forward with either more precise statistical evidence demonstrating that no significant disparity existed or that there was a compelling justification for the procedure resulting in the disparity in the jury pool.

Concluding that the trial court erred when it found that the defendant had not made a prima facie case, the court characterized the error as prejudicial per se and reversed the conviction. It took no position, however, on the issue of whether the decision should be given retroactive effect.

In *Cantu,* the Court of Appeal for the Fifth District determined that *Harris* should be given only prospective application. It reached this result after carefully considering the purpose of the new rule, the extent of reliance placed on the former standard, and the effect retroactivity would have on the administration of justice. (See *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967].) We are persuaded by the court's analysis and thus adopt it here.

In the case at bench, defendant introduced statistical evidence strikingly similar to that used in *Harris.* Since we have determined that *Harris* has no application here, we utilize the former rule in determining whether the trial court erred in denying defendant's motion to dismiss the jury panel.

The "pre-*Harris*" rule can be stated as follows: "Courts have repeatedly emphasized that no reliable conclusion can be drawn when total population rather than voter population is used as the base. [Citations.]" (*People* v. *Lewis* (1977) 74 Cal.App.3d 633, 646 [141 Cal.Rptr. 614], fn. omitted.) Applying the "old rule," we find that defendant failed to establish a prima

---

[1]Since July 1981, counties must include licensed drivers, as well as registered voters, in the pool of potential jurors. (Code Civ. Proc., § 204.7.)

facie case and that the trial court therefore correctly denied his motion to quash the jury venire.

Under the compulsion of *Carlos* and *Garcia* we must reverse the special circumstance finding and remand this matter to the trial court for retrial of that issue under instructions which satisfy the holding in *Carlos*. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)[2]

The reference by the Supreme Court in its order of transfer to *People* v. *Williams, supra,* 30 Cal.3d 470, is puzzling since there is, as we shall point out, abundant evidence from which a properly instructed jury could conclude that defendant intended the killing and there is nothing in the record to suggest that defendant, who has already been spared the death penalty, is entitled to further leniency.

The evidence reveals that defendant was the ringleader of a gang of persons who, in varying combinations which always included defendant, committed a series of armed robberies. As noted earlier, defendant on each occasion was personally armed with a shotgun and in an attempt to avoid apprehension blinded a deputy sheriff.

During the course of the robbery in which the killing took place, defendant was clearly in charge. He directed his cohort Tanner to "watch the door." In response to defendant's command Tanner guarded the door and deliberately killed a patron who apparently attempted to leave.

We do not read *Carlos* as requiring that in order to support a finding of special circumstance a killing in the perpetration of a robbery must be the planned or premeditated killing of a particular person, only that a killing be intended as distinguished from accidental. Nor does *Carlos* or *Garcia* require that the intent to kill be proved only by utterances of the defendant. The intent can be inferred from the circumstances.

Armed robbery requires the basest antisocial mentality. Its perpetrators manifest a complete disregard for human life and the most rudimentary principles of civilized existence. When two individuals armed with shotguns, as here, enter a place of business to commit a robbery it can clearly be inferred that they are prepared to kill if necessary to achieve their goal. The fact that, as circumstances develop, only one of the two finds it necessary to shoot, does not suggest that the other did not intend that result.

---

[2]Defendant's challenge to the felony-murder doctrine was rejected in *People* v. *Dillon* (1983) 34 Cal.3d 441, 450 [194 Cal.Rptr. 390, 668 P.2d 697], and thus requires no further discussion here.

Here defendant's partner, Tanner, intentionally killed the victim. The primary reason this was the act of Tanner, rather than defendant personally, was that defendant had assigned himself the role of cleaning out the cash register and assigned Tanner the role of "enforcer" of the bandit teams' edicts. Defendant's later shooting of a deputy sheriff should dispel any doubt concerning defendant's intent and willingness to kill when circumstances required it.

Based upon the foregoing we have no doubt that, under proper instructions, the evidence is more than sufficient to support a finding of special circumstances. (*People* v. *Garcia, supra,* at pp. 557-558.)

We have examined each of defendant's remaining contentions and find them to be devoid of arguable merit. (Cal. Const., art. VI, § 13.)

The finding of special circumstances is vacated and this matter is remanded to the trial court for retrial of that issue under the principles of *Carlos*. In all other respects the judgment is affirmed.

Beach, J., and Gates, J., concurred.

A petition for a rehearing was denied May 1, 1985, and appellant's petition for review by the Supreme Court was denied July 11, 1985.