**Venson Lane MYERS, Petitioner-Appellant,**

v.

**Eddie S. YLST, Warden, Respondent-Appellee.**

**No. 88–6334.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1989.

Decided Feb. 28, 1990.

Harvey R. Zall and Fern M. Laethem, State Public Defenders, Donald L.A. Kerson, Michael Pescetta, Deputy State Public Defenders, San Francisco, Cal., for petitioner-appellant.

Thomas L. Willhite, Deputy Atty. Gen., State of Cal., John R. Gorey, Supervising Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before FLETCHER and KOZINSKI, Circuit Judges, and MUECKE,* District Judge.

FLETCHER, Circuit Judge:

Myers, a prisoner serving a life sentence, petitioned for a writ of habeas corpus in the district court arguing that the California Supreme Court's disparate treatment of his case and an essentially identical case denied him the equal protection of the laws. The district court denied the writ. We reverse.

I

In 1979, a jury found Myers guilty of first degree murder, assault, and robbery. Myers argues that the California Supreme Court's refusal to order a new jury trial in his case was unconstitutional. In Myers' view, the California Supreme Court violated the equal protection clause when it declined to apply a decision regarding the right to an impartial jury retroactively in his case even though it had done so in an essentially identical case.

This appeal turns on the Supreme Court of California's handling of three cases—*In re Rhymes*, 215 Cal.Rptr. 852, 701 P.2d 1170 (1985),[1] *People v. Myers*, 43 Cal.3d 250, 729 P.2d 698, 233 Cal.Rptr. 264 (1987), and *People v. Harris*, 36 Cal.3d 36, 679 P.2d 433, 201 Cal.Rptr. 782 (1984). *Rhymes* and *Myers* were pending on appeal before the supreme court when the court decided *Harris*.

The relevant facts and issues in *Rhymes* and *Myers* were essentially identical. Both cases raised the question of how a defendant may prove that a jury venire is not sufficiently representative of the community.

In *Rhymes*, the defendant argued in a state habeas corpus proceeding before the Los Angeles County Superior Court that her conviction, handed down by a Pomona jury, should be reversed because the Pomona Judicial District's reliance on voter registration lists violated the United States' and California's constitutional guarantees

---

* Hon. C.A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation.

1. In *Rhymes*, the Supreme Court of California, by order, directed the California Court of Appeal to refile an opinion originally published at 130 Cal.App.3d 232, 181 Cal.Rptr. 764 (1982). Pursuant to the supreme court's order, the court of appeal refiled the opinion at 170 Cal.App.3d 1100, 217 Cal.Rptr. 439 (1985).

of a trial by an impartial jury drawn from a cross-section of the community. The superior court conducted an evidentiary hearing and concluded on October 20, 1980 that Rhymes should be granted the writ.

At the time the writ was granted in *Rhymes*, Myers' trial, which also took place in Pomona, was in the jury selection phase. Three days after the superior court's decision in *Rhymes*, and before jury selection was completed in his own case, Myers timely moved for a mistrial. The primary basis for Myers' challenge consisted of statistical reports and evaluations introduced in the *Rhymes* case. *Myers*, 43 Cal.3d at 261, 729 P.2d at 704, 233 Cal.Rptr. at 269 (Myers "relied almost entirely on the statistical studies, legal briefs, referee's report, and order in the *Rhymes* case"). The statistics compared the percentages of racial minorities on jury panels in Pomona with the percentages of racial minorities in the general population of Los Angeles County. "The only difference between *Rhymes* and [*Myers*] is that Rhymes was tried by a municipal court jury in the Pomona Judicial District, while [Myers] was tried by a superior court jury in that same district. However, the deputy jury commissioner testified in [*Myers*] that superior and municipal court juries in Pomona are chosen *from the same pool*." *Myers*, 43 Cal.3d at 283, 729 P.2d at 719–20, 233 Cal.Rptr. at 285 (Bird, C.J., dissenting).

Myers' motion for a mistrial was denied. His trial proceeded, and he received a sentence of death. Because the judgment was death, Myers' appeal was taken directly from the trial court to the California Supreme Court.

At the time *Myers* was transferred, *Rhymes* was pending before the California Court of Appeal. On April 21, 1982, that court affirmed the superior court's holding that Rhymes had made a prima facie case of under-representation of blacks in Pomona's jury venire. The court of appeal held that a challenge to the use of voter registration lists may be based on comparisons between minority representation on venires and their representation in the *general population*. The court held that the de-

fendant need not compare minority representation on venires to that in the voter population or in the "eligible-to-vote" population: "While it is true that courts have repeatedly stated that no reliable conclusion can be drawn when total population rather than voter population or eligible population is used, uncertainty in the ratio between the eligible and the total population does not preclude a court from finding under-representation when total population is used as the base." *Rhymes*, 181 Cal.Rptr. at 771. The court of appeal accordingly ordered a new trial.

On May 27, 1982, the California Supreme Court granted hearing in *Rhymes*.

On April 20, 1984, while both *Rhymes* and *Myers* were pending before the California Supreme Court, the court decided *Harris*. In *Harris*, the defendant also challenged the constitutionality of the use of voter registration lists as the basis for the jury venire. As in *Myers* and *Rhymes*, the proof was statistics that compared the representation of minorities on jury venires with their representation in the general population of Los Angeles County. The only difference between the *Harris* case and the *Myers* and *Rhymes* cases is that Harris was tried in Long Beach, while the other two were tried in Pomona. *Harris* was the first case in which the California Supreme Court held that a criminal defendant could establish a prima facie case of under-representation of minorities on a jury venire by reliance on the disparity between the percentage of minorities in the general population and the jury venire, rather than on disparities between the jury-eligible population and the jury venire. The court accordingly remanded for a new trial. The court reserved the question whether its new rule would be applied retroactively.

On June 6, 1985, the California Supreme Court transferred the case of *In re Rhymes* to the court of appeal "with directions to refile its opinion." 701 P.2d 1170, 215 Cal.Rptr. 852. Rhymes would thus receive a new trial.

On January 2, 1987, the California Supreme Court in *Myers* held that *Harris* does not apply retroactively and that Myers' challenge to his jury panel therefore failed because Myers relied on general population figures. Myers would thus not receive a new trial.[2]

The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. *Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.1985). We have jurisdiction pursuant to 28 U.S.C. § 2253.

## II

As a preliminary matter, we address the state's argument that Myers did not base his equal protection argument in the district court on the disparate treatment accorded the *Rhymes* case and his case and that he is therefore precluded from doing so on appeal. The state concedes that Myers argued that he had been denied equal protection in the district court, but contends that his equal protection argument was based solely on *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In *Griffith*, the Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constituted a 'clear break' with the past." 479 U.S. at 328, 107 S.Ct. at 716.[3]

Our review of the record persuades us that Myers raised his *Rhymes* theory in the district court and thus preserved it for appeal. Myers' habeas petition did not specifically rely on *Griffith*. Rather, the petition simply stated that the California Supreme Court's decision not to apply *Harris* retroactively to his case denied him equal protection. In his memorandum in support of the petition, Myers based his equal protection argument in part on the disparate treatment afforded Rhymes and himself:

The inequities are doubled when we consider the relationship of appellant to Deborah Rhymes. The *Myers* challenge was tried in the same courthouse and on the identical evidentiary record as *Rhymes*. Both cases were pending together in appellate courts for over one year before. Ms. Rhymes obtained a favorable decision on the jury question. (*In re Rhymes* (1982) 130 Cal.App.3d 232, 181 Cal.Rptr. 764). The California Supreme Court granted a hearing in *Rhymes*, and then for two years *Myers* and *Rhymes* sat side-by-side waiting to be decided. After the *Harris* decision, the Supreme Court, in 1984, transferred *Rhymes* back to the Court of Appeal with directions to refile the 1982 opinion.

So, over a several year period three people had cases pending in the California Supreme Court raising the identical issue. Two of them [Rhymes and Harris] got the benefit of the new rule. Venson Myers did not.

In Myers' reply to the state's opposition to the petition, he again raised the *Rhymes* issue:

On evidence almost identical to what we have here Mr. Harris was granted an entire new trial. On exactly the same evidence Ms. Rhymes was given an entire new trial. It is "the most basic principle of jurisprudence that 'we must act alike in all cases of like nature.'" (Friendly, Indiscretion About Discretion (1982) 31 Emory L.J. 747, 758.)

Finally, Myers presented his equal protection/*Rhymes* argument forcefully in his objections to the magistrate's report and recommendations:

Venson Myers and Deborah Rhymes were tried in the same courthouse within weeks of each other. The jury challenge in *Myers* was the record of the jury challenge in *Rhymes*. The *Rhymes* and *Myers* cases were both pending in the California Supreme Court at the same

---

**2.** In the same opinion, the court reversed Myers death sentence for reasons unrelated to jury selection. He is now serving a life term.

**3.** *Griffith* was decided only eleven days after the California Supreme Court decided *Myers*.

Myers then filed a petition for rehearing to the California Supreme Court, asking it to reconsider in light of *Griffith*. The court ordered briefing and denied the petition without opinion.

time. After *Harris* was decided the California Supreme Court disposed of *Rhymes* in a way that gave Ms. Rhymes the practical benefit of the *Harris* rule. Myers did not get that benefit.

Even if respondent is correct and *Griffith* has nothing to do with retroactivity of state court decisions, the California Supreme Court's treatment of *Myers* and *Rhymes* violates petitioner's right to the equal protection of the laws.

"Although the state court has the right to make a ruling retroactive, prospective, or permit limited retroactivity, once it has established a rule it must apply it with an even hand." (*Northrop v. Alexander*, [(N.D.Cal.1986)] 642 F.Supp. [324] at p. 329; *Johnson v. Arizona*, (9th Cir.1972) 462 F.2d 1352).

The Magistrate, like the California Supreme Court, has not even suggested a principled reason for this disparate treatment of Rhymes and Myers on identical evidence.

In sum, we find no support for the state's contention that Myers failed to raise the *Rhymes* argument below.

### III

■ The equal protection clause prohibits a state from affording one person (other than the litigant whose case is the vehicle for the promulgation of a new rule) the retroactive benefit of a ruling on a state constitution's right to an impartial jury while denying it to another.[4] In *Johnson v. State of Arizona*, 462 F.2d 1352, 1354 (9th Cir.1972), we held that the State of Arizona could not apply a decision striking down determinate sentences retroactively in some cases but not all. Although a number of sentences had been vacated for resentencing in light of a decision by the Arizona Supreme Court (*Ard v. State ex rel. Superior Court*, 102 Ariz. 221, 427 P.2d 913 (1967)), the Arizona Supreme Court refused to vacate Johnson's determinate sentence. Relying on the equal protection clause, the court remanded to the

district court to consider the retroactivity of the *Ard* decision and stated that "[i]f not so reconsidered within 45 days, the writ shall issue." *Johnson*, 462 F.2d at 1354. In *La Rue v. McCarthy*, 833 F.2d 140, 142 (9th Cir.1987), we suggested that California must apply decisions holding that a felony murder charge may not be based on child abuse retroactively in all cases or in none. "[W]e agree that once a state has established a rule it must be applied evenhandedly." *Id.* at 142 (citing *Johnson v. Arizona*, 462 F.2d 1352, 1354 (9th Cir.1972)).

There is no reason not to extend the reasoning of *Johnson* and *La Rue* to cases involving challenges to the impartiality of a jury in a criminal case. Like rules regarding sentencing and the definition of felony murder, rules regarding the selection of juries in criminal cases involve an important aspect of a person's treatment in the criminal justice system. A state should not be permitted to treat defendants differently for the purposes of jury selection unless it has "some rational basis, announced with reasonable precision" for doing so. *Johnson*, 462 F.2d at 1354.

■ If the California Supreme Court retroactively applied *Harris* in *Rhymes* but not in *Myers*, it violated the equal protection clause. As we recognized in *Johnson* and *La Rue*, the equal protection clause prohibits de facto as well as explicit, or open, unequal and arbitrary treatment. Thus, the relevant question is whether the California Supreme Court in effect afforded Rhymes the retroactive benefit of *Harris* while denying Myers that benefit.

### IV

■ The state argues that the refiling order in *Rhymes* was not a retroactive application of *Harris* because (1) the refiling order did not necessarily imply that Rhymes was receiving the benefit of *Harris;* and (2) the refiling order was merely a "procedural ruling" and thus could not qualify as a substantive retroactive applica-

---

**4.** An exception is made for the litigant whose cases establishes the rule, because otherwise there would be no incentive for an individual litigant to challenge existing interpretations of law. *See Stovall v. Denno*, 388 U.S. 293, 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

tion of the *Harris* ruling. Neither of these arguments has merit.

### a. *Whether The Refiling Order Necessarily Implies That Rhymes Received The Benefit of* Harris

As a practical matter, the California Supreme Court's refiling order in *Rhymes* afforded Rhymes the benefit of *Harris*. In January of 1987, the California Supreme Court held that Myers' reliance on comparisons between minority representation on venires and their representation in the general population was improper "under the 'pre-*Harris*' authorities." *Myers*, 43 Cal.3d at 269, 729 P.2d at 710, 233 Cal. Rptr. at 275. "[V]irtually all the California decisions which had addressed challenges to the use of voter registration lists before *Harris* had rejected evidentiary presentations which relied on general population, rather than jury-eligible statistics.... *Harris* simply created a new standard for determining the existence of a prima facie case." 43 Cal.3d at 268, 729 P.2d at 709, 233 Cal.Rptr. at 274–75. *See also People v. Pendleton*, 167 Cal.App.3d 413, 417, 212 Cal.Rptr. 524, 526 (1985) ("The 'pre-*Harris*' rule can be stated as follows: 'Courts have repeatedly emphasized that no reliable conclusion can be drawn when total population rather than voter population is used as a base.'") (citation omitted).

The court of appeal in *Rhymes* held that a defendant could base his prima facie case of jury under-representation on comparisons between minority representation on venires and their representation in the general population. Since the court of appeal's decision in *Rhymes* pre-dated *Harris* and since the California Supreme Court has held that reliance on general population figures was improper "under the pre-*Harris* authorities," *Myers*, 43 Cal.3d at 269, 729 P.2d 698, 233 Cal.Rptr. 264, the California Supreme Court could only have permitted the court of appeal's holding on the use of general population statistics to stand by de facto applying *Harris* retroactively.

### b. *Whether The Refiling Order Was A Mere Procedural Order*

The state argues that the order to refile the court of appeal's opinion was merely a "procedural" device for disposing of the case and thus did not indicate that the California Supreme Court approved of the court of appeal's holding on the use of general population statistics. The state contends that, since the California Supreme Court in effect decided *not* to decide the *Rhymes* case, the court reached the issue of the retroactivity of *Harris* for the first time in *Myers*. It is arguable that the equal protection clause does not prohibit a court from disposing of a case on merely "procedural" grounds when the end result of that "procedural" disposition is to give one criminal defendant the practical benefit of a new rule of state criminal procedure while denying that benefit to another criminal defendant in an essentially identical case. We need not reach this issue, however, since the order to refile in *Rhymes* was not merely a "procedural" decision that expressed no view as to the merits of Rhymes' appeal.

The California Supreme Court granted a hearing in the *Rhymes* case. In the often-cited case of *Knouse v. Nimocks*, 8 Cal.2d 482, 66 P.2d 438, 439 (1937), the California Supreme Court explained the effect of a grant of hearing:

> The opinion and decision of the District Court of Appeal, by our order of transfer, have become a nullity and are of no force or effect, either as a judgment or as an authoritative statement of any principle of law therein discussed.... [W]ithout some further express act of approval or adoption of said opinion by this court, that opinion and decision are of no more effect, as a judgment or as a precedent to be followed in the decision of legal questions that may hereafter arise, than if they had not been written.

Under the law existing in California at the time the supreme court withdrew the *Rhymes* opinion and granted a hearing, the court had to approve or adopt the lower court's opinion if it agreed with the lower court, or alternatively, it had to reverse the lower court if it disagreed. Either way, the supreme court had to make a substan-

tive ruling on the merits.[5] The court's decision to transfer the case back to the court of appeal with directions to refile its opinion was an approval of the court of appeal's decision in *Rhymes*. The supreme court in effect retroactively applied *Harris*.

The supreme court's opinion in *Myers* itself lends further support to the proposition that the supreme court's refile order in *Rhymes* had substantive implications. In *Rhymes*, the court of appeal, in addition to deciding that general population statistics could be used to establish a prima facie case of group under-representation on a jury venire, also decided the question of the retroactivity of its holding. The court of appeal held that its decision would be prospective only. In *Myers*, the supreme court reasoned that its decision to order the refiling of *Rhymes* is one of "our actions since *Harris* [which] ... support[s] the conclusion that *Harris* should not apply retroactively." 43 Cal.3d at 265–66, 729 P.2d at 707, 233 Cal.Rptr. at 272. The court can't have it both ways: if the refile order constitutes approval of the part of *Rhymes* dealing with retroactivity, how could it not simultaneously constitute ap-

proval of the court of appeal's holding in *Rhymes* that a defendant could establish a prima facie case of under-representation by reference to general population statistics? The fact that the court in *Myers* felt compelled to argue that its order in *Rhymes* was consistent with its holding in *Myers* is proof positive that a refiling order is a substantive disposition on the merits. *See also People v. Osuna,* 187 Cal.App.3d 845, 847, 232 Cal.Rptr. 220, 221 (1986) ("Our high court's directive to 'refile [our] opinion,' ... demonstrates its members ... agreed with our original conclusion.")[6]

■ At the time it decided *Harris*, the California Supreme Court had pending before it two cases raising essentially identical issues. In *Rhymes*, it decided to grant a criminal defendant the retroactive benefit of *Harris* by means of a refiling order. In *Myers*, the court denied a criminal defendant the retroactive benefit of *Harris* in a full opinion. The California Supreme Court's decision to deny Myers the benefit accorded Rhymes is not made constitutional simply because Rhymes received her benefit by means of a refiling order, rather than by a full opinion.[7]

5.  As a result of an amendment to the California Constitution passed three years after the grant of hearing in *Rhymes,* the California Supreme Court no longer follows the unusual procedure of vacating lower court opinions that it decides to review. *See* Rules 28 and 29 of the California Appellate Rules. Prior to the amendment, California was one of only three states whose highest court vacated appellate court decisions prior to reviewing them.

6.  The court often transfers cases with instructions to refile the opinion with minor modifications, such as the addition of relevant citations. *See, e.g., Zarback v. Superior Court,* 763 P.2d 479, 252 Cal.Rptr. 816 (1988). The court of appeal's jurisdiction upon retransfer is limited to execution of the supreme court's direction. *M Restaurants, Inc. v. San Francisco Hotel Joint Executive Bd. of Culinary Workers,* 124 Cal. App.3d 666, 177 Cal.Rptr. 690, 693 (1981).

A refiling order appears to be somewhat analogous to a summary affirmance by the United States Supreme Court. The Supreme Court has held that a "summary affirmance settles the issues for the parties," *Fusari v. Steinberg,* 419 U.S. 379, 392, 95 S.Ct. 533, 541, 42 L.Ed.2d 521 (1975), and demonstrates the Supreme Court's approval of the judgment of the lower court. At the same time, the Court has warned that a summary affirmance does not

necessarily mean that the Court "adopted the reasoning as well as the judgment" of the lower court. *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977). In this case, however, the California Supreme Court's order to refile the *Rhymes* opinion makes sense *only* if one assumes that the supreme court agreed with the court of appeal on the acceptability of general population statistics.

7.  The dissent argues that the refile order cannot be a substantive decision because Article VI § 14 of the California Constitution provides: "Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." The dissent interprets "causes" to mean dispositions on the merits. The problem with the dissent's argument is that it is inconsistent with the California Supreme Court's and this circuit's interpretation of the California Constitution.

In *People v. Ford,* 30 Cal.3d 209, 178 Cal.Rptr. 196, 635 P.2d 1176 (1981), the California Supreme Court disposed of several contentions simply by referencing the opinion of the court of appeal, even though that opinion had been vacated and nullified by the supreme court's grant of a hearing in that case. Against the argument that such an action violated § 14, the supreme court stated that the lower court's writ-

In his dissent in *Desist v. United States*, 394 U.S. 244, 259, 89 S.Ct. 1030, 1039, 22 L.Ed.2d 248 (1969), Justice Harlan pointed out that an inevitable consequence of a rule of prospectivity is that lower court decisions which later turn out to be correct must be reversed if the rule of prospectivity is to be enforced in a consistent manner. This is one reason why he argued for applying rules retroactively to cases on direct appeal. The Supreme Court in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), recently adopted Justice Harlan's reasoning in *Desist*, and although we do not reach the issue of whether *Griffith* applies to state court decisions promulgating new rules, we do note that the facts of this case perhaps illustrate why the United States Supreme Court has, at least with regard to federal decisions, decided to adopt Justice Harlan's position that retroactive application of decisions is the least problematic approach to administering new rules.

Although in theory it may seem troubling that as a price for making a "new" rule strictly prospective, a court would have to upset a lower court decision that anticipated the "new" rule, it must be borne in mind that in reality that price will rarely have to be paid. Court-made rules are ordinarily applied retroactively, and, even before *Griffith*, on direct appeal such rules were not applied retroactively only when the rule represented a clear break from precedent. *See United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). In this case two lower courts, the superior court and the appeals court in *Rhymes*, anticipated *Harris*, a fact which would ordinarily cut against a determination that the "new" rule was really "new" at all.

If we are to take the California Supreme Court at its word, we must accept the proposition that "*Harris* ... created a new standard for determining the existence of a prima facie case." *Myers*, 43 Cal.3d at 269, 729 P.2d 698, 233 Cal.Rptr. 264. Under the dissent's reasoning, Ms. Rhymes would win and Mr. Myers would lose because Rhymes' case found its way into the hands of errant judges, while Myers' judges followed the law. It is hard to imagine a more arbitrary way to administer justice.[8]

ten opinion, although vacated, satisfied the supreme court's duty to comply with § 14 because "[a] copy of that opinion, of course, was duly furnished to all parties herein, and remains available in the public records of this court and the Court of Appeal." *Ford,* 178 Cal.Rptr. at 200, 635 P.2d at 1180. In other words, the purpose of § 14 is simply to furnish the parties with an explanation of the appellate court's reasoning, even if that reasoning is contained in a nullified document. In Rhymes' case, the parties have been furnished two written opinions from appellate courts, so § 14 has clearly been complied with.

Moreover, this circuit in *Harris v. Superior Court,* 500 F.2d 1124, 1128 (9th Cir.1974), in an *en banc* opinion, held that the California Supreme Court's denial of "a habeas corpus petition without opinion or citation" is a decision on the merits. *See also La Rue v. McCarthy,* 833 F.2d 140, 143 (9th Cir.1987) (interpreting California Supreme Court's denial without explanation of a habeas petition to constitute a rejection of petitioner's substantive claim); *Lewis v. Borg,* 879 F.2d 697 (9th Cir.1989).

8. The dissent suggests that, assuming *Rhymes* was decided on the merits, the preferential treatment the supreme court accorded Rhymes was justified, because to reinstate her conviction in order to apply *Harris* prospectively would be a "harsh result." This implies that Rhymes' victory in the court of appeal somehow gave her an expectation of—and presumably an entitlement to—victory in the supreme court greater than that of Myers. Such an argument ignores the fundamental principle that legal questions are reviewed *de novo* on direct appeal, with no deference to lower court rulings. The California Supreme Court's grant of a hearing in Rhymes' case put her in an identical position to Myers with respect to the expectation of a new trial based on *Harris*.

The dissent's other argument to justify the supreme court's inconsistent treatment—that the court may have wanted to avoid delay in granting Rhymes a new trial—is flawed. The argument begs the question whether Rhymes would be entitled to a new trial in the event *Harris* were to be given a strictly prospective effect. Once *Harris* was decided, the retroactivity of *Harris* was a threshold issue in both *Rhymes* and *Myers*. The failure to treat it as a threshold issue may have played a part in causing the inconsistent results. *See Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 1069, 1079 n. 2, 1090–91 n. 7, 103 L.Ed.2d 334 (noting the pitfalls of a failure to decide the retroactivity question promptly).

## V

The state also argues that *Harris* is wrong as a matter of federal law. The state contends that this court should therefore hold that Myers has not made out a prima facie Sixth Amendment case whether or not *Harris* has ever been applied retroactively. Myers responds that *Harris* is based in part on the California Constitution and that this case is really about the consistency with which California has applied an interpretation of its own constitution. We agree with Myers.

We read *Harris* as an interpretation of both the United States and California Constitutions. The *Harris* court introduces its discussion of the merits of Harris' challenge with the statement that the right to an impartial jury drawn from a representative cross-section of the community is guaranteed by the Sixth Amendment of the United States Constitution and Article I § 16 of the California Constitution. 36 Cal.3d at 48–49, 679 P.2d at 439, 201 Cal. Rptr. at 788. In doing so, the court implies that both the state and federal constitutions mandate its holding with respect to challenges to voter registration lists. This interpretation is also supported by the *Harris* court's citation to both California and federal cases. 36 Cal.3d at 48–50, 53, 679 P.2d at 439–40, 442, 201 Cal.Rptr. at 788–89, 791.

The history of California constitutional law suggests that the *Harris* court did not hold that the California Constitution permits a defendant to make out a prima facie challenge to voter registration lists based on general population statistics simply because it believed that federal law permits a defendant to do so. *Cf. Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983) (state ground is not independent and adequate ground so as to preclude Supreme Court review if the state court decided the state constitutional issue "the way it did because it believed

that federal law required it to do so"). With respect to the right to a jury trial, California has a long history of imposing a higher standard under its constitution than exists under the federal constitution. The *Harris* court discussed at some length *People v. Wheeler,* 22 Cal.3d 258, 270, 583 P.2d 748, 757, 148 Cal.Rptr. 890, 898–99 (1978) (footnote omitted), an opinion which reviews this history:

> We have reviewed this line of United States Supreme Court opinions in some detail because we fully agree with the views there expressed as to the importance of the representative cross-section rule, particularly in protecting the constitutional right to a jury. We rely equally, however, on the law of California. It was not until its 1975 decision in *Taylor* [*v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)] that the high federal court imposed the representative cross-section rule on the states as a fundamental component of the Sixth Amendment right to an impartial jury incorporated in the Fourteenth Amendment. In California we had long since adopted that rule.

In sum, we conclude that the correctness of *Harris* as a matter of federal law is irrelevant because *Harris* is independently grounded in an interpretation of the California Constitution.[9]

## VI

We hold that the California Supreme Court violated the equal protection clause when it denied Myers the retroactive benefit of *Harris.* We reverse the district court's denial of the writ of habeas corpus and remand this case to the district court with the direction that it issue the writ and determine a reasonable time in which to retry Myers.

9. Moreover, in this appeal from Myers' habeas proceeding, we are not reviewing *Harris.* We are only concerned with equal protection. Even if *Harris* were decided exclusively on erroneous federal grounds, the state court would still have to apply its erroneous reading even-handedly. If one person receives the benefit of a state court interpretation of federal law, so should a second—as long as the United States Supreme Court does not decide the issue in the time between the two cases or the state supreme court does not overrule its previous decision.

KOZINSKI, Circuit Judge, dissenting:

According to the majority, the California Supreme Court's remand order in *In re Rhymes*, 215 Cal.Rptr. 852, 701 P.2d 1170 (1985), instructing the court of appeal to refile its opinion, constituted a retroactive application of *People v. Harris*, 36 Cal.3d 36, 201 Cal.Rptr. 782, 679 P.2d 433 (1984). Having applied *Harris* retroactively in *Rhymes*, the majority reasons, the supreme court was thereafter precluded from denying Venson Myers, or anyone else in his position, the benefit of *Harris*.

The majority reaches the wrong conclusion because it starts with a faulty premise. The one sentence order in *Rhymes* was not an application of anything; it was a simple housekeeping order, sending back to the court of appeal a case that the supreme court no longer wished to hear. At the same time, the supreme court expressly reserved the retroactivity question for resolution in *People v. Myers*, 43 Cal.3d 250, 233 Cal.Rptr. 264, 729 P.2d 698 (1987). The California Supreme Court chose to resolve the issue of the retroactivity of *Harris* in one case rather than in another. This was within its authority to do. There is nothing inequitable in that decision, and it provides no excuse for a federal court to micromanage the California Supreme Court's docket, overturning an eight-year-old murder conviction.

## I

In *Harris*, the Supreme Court of California decided that defendants may challenge juries selected from voter registration lists by comparing minority representation on those lists to minority representation in the general population. *Harris*, 36 Cal.3d at 59, 201 Cal.Rptr. 782, 679 P.2d 433. The court explicitly left open the question whether its ruling would apply retroactively:

A majority of the justices of this court, however, do not agree on whether, and to what extent, the rule announced in this case should be given retroactive effect. *We therefore take no position as to the disposition of other cases presenting issues concerning the repre-sentative character of juries selected from voter registration lists alone.*
*Id* (emphasis added).

At that time, both *Rhymes* and *Myers* were before the court, having been held pending *Harris*. Both cases presented the same substantive issue as *Harris* but, obviously, only one was necessary in order to decide the question of retroactivity. The court picked *Myers* for the resolution of that question and sent *Rhymes* back to the court of appeal with instructions to refile its opinion.

In *Myers*, the supreme court for the first time addressed the retroactivity issue and denied Myers the benefit of *Harris*. *Myers*, 43 Cal.3d at 269, 233 Cal.Rptr. 264, 729 P.2d 698.

I see no inconsistency or invidiousness in the actions of the California Supreme Court. The court was under no obligation to decide the retroactivity of *Harris* in *Rhymes*, *Myers* or any other case. The Equal Protection Clause prevents the court only from applying *Harris* retroactively to one litigant but not to another. As long as the court continued to avoid review of lower court decisions dealing with the *Harris* issue, it could decide the retroactivity question whenever it thought it most appropriate.

That is what happened here. Finding itself divided over the question of retroactivity in *Harris*, the court made a considered decision to leave that question open. It then scheduled for argument one of two cases on its docket appropriate for resolving the retroactivity issue, sending the other back to the court of appeal untouched.

By contrast, the majority believes that the supreme court conclusively decided retroactivity when it remanded *Rhymes*. But the remand order clearly was *not* a retroactive application of *Harris*. For one thing, the supreme court's refile order in *Rhymes* is not a decision on the merits under California law. Article VI, section 14 of the California Constitution limits the methods by which California appellate courts may dispose of cases on the merits

by requiring a written disposition containing stated reasons: "Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." Cal. Const., Art. VI, § 14. The term "causes" "has been interpreted to mean decisions on the *merits*." B.E. Witkin, 9 *California Procedure* § 554 at 541 (Bancroft–Whitney, 3d ed. 1985) (emphasis original).

The *Rhymes* order stated in its entirety:

The above entitled matter is retransferred to the Court of Appeal, Second Appellate District, Division One, with directions to refile its opinion.

BIRD, C.J., and BROUSSARD, REYNOSO and GRODIN, JJ., concur.

*In re Rhymes*, 215 Cal.Rptr. 852, 701 P.2d 1170 (1985). This laconic order hardly comports with section 14: Not only does it fail to contain a statement of reasons, it does not even purport to be the action of the full court. While four justices signed the order, it is unclear whether the remaining three justices agreed, disagreed or even participated in the decision. If the refile order in *Rhymes* was a disposition on the merits, it would surely place the California Supreme Court in violation of the state's constitution, not merely in that case, but in the many other cases where the court has employed a similar device.

The majority relies on *People v. Ford*, 30 Cal.3d 209, 178 Cal.Rptr. 196, 635 P.2d 1176 (1981), for the proposition that the California Supreme Court can, consistent with its own constitution, reach the merits of a case without stating reasons. But *Ford* does not help the majority here. In *Ford*, the supreme court published a full written opinion, with all justices accounted for, in which it explicitly adopted part of the court of appeal decision as its own. 30 Cal.3d at 216, 178 Cal.Rptr. 196, 635 P.2d 1176. The unpublished court of appeal decision was referenced as a statement of the reasons for part of the *supreme court's own judgment* in the case. In sharp contrast, the *Rhymes* order did not adopt the court of appeal decision, nor did it reach any decision of its own; it simply retransferred the case without comment. The opinion of the California Supreme Court in *Ford* is published in *California Reports*. By the majority's reasoning, the supreme court's opinion in *Rhymes* is published in *California Appellate Reports*. I suggest that this would make legal research in California extremely difficult.[1]

Similarly, the majority places too much emphasis on the rule of *Knouse v. Nimocks*, 8 Cal.2d 482, 66 P.2d 438 (1937). The majority reasons that, because the court of appeal decision becomes a nullity

---

1. *Harris v. Superior Court*, 500 F.2d 1124 (9th Cir.1974), and *Lewis v. Borg*, 879 F.2d 697 (9th Cir.1989), are even less relevant. First of all, neither case discussed the requirements of California Constitution Article VI, section 14. Moreover, those cases dealt with the issue of when the California Supreme Court's summary denial of a state habeas petition will satisfy the exhaustion of state remedies requirement for federal habeas review. Such denials are decisions on the merits only in the sense that they fail to indicate that the supreme court denied state habeas on the basis of a procedural default. The petitioner thereby demonstrates to the federal court that there is nothing left for him to do in state court. *Harris v. Superior Court*, 500 F.2d at 1128–29. As long as the supreme court's action was *not* based on a procedural default, the federal court's inquiry into the nature of that action is at an end.

This is a far different inquiry than we must make today. We are not concerned with whether the *Rhymes* refile order was evidence of

exhaustion. Rather, we must decide whether the order was an explicit adoption of a lower court ruling. *Harris v. Superior Court* and *Lewis* will not support the majority's conclusion that it was.

*LaRue v. McCarthy*, 833 F.2d 140 (9th Cir. 1987), also will not make the majority's case. In *LaRue*, the petitioner claimed that the California Supreme Court had denied him equal protection by rejecting his petition for a writ of habeas corpus, and thereby refusing to apply retroactively a recent supreme court case. We found no evidence that the supreme court had ever applied the recent case retroactively, and hence found no violation of equal protection. *Id.* at 142. Relying on *Harris*, we also concluded that the California Supreme Court's summary denial of the petition for habeas was a decision on the merits as to nonretroactivity. *Id.* at 143. This conclusion was unnecessary, as the equal protection issue had already been resolved. *LaRue*, like *Harris* and *Lewis*, did not consider the effect of section 14.

when a case is transferred to the supreme court, the higher court therefore has no option but to reach the merits of the case. This analysis ignores the possibility that, instead of approving, adopting or reversing the lower court, the supreme court may, in light of intervening circumstances, simply change its mind about hearing the case at all.

That is precisely what the court did in *Rhymes*. Having chosen *Myers* to resolve the retroactivity issue, there was nothing to be done with *Rhymes*, so the supreme court reversed its decision to hear the case. This is not a decision on the merits. As Bernard Witkin, the leading authority on California procedure, has noted:

> [B]y granting a hearing and later directing adoption of the same opinion, the Supreme Court in effect render[s] a delayed order denying a hearing.

B.E. Witkin, 9 *California Procedure* § 708 at 680 (Bancroft–Whitney, 3d ed. 1985). This court has previously recognized the well-established rule that "[t]he denial of a hearing by the California Supreme Court [does] not constitute a decision on the merits." *Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 n. 3 (9th Cir.1986). See also *People v. Triggs*, 8 Cal.3d 884, 890, 106 Cal.Rptr. 408, 506 P.2d 232 (1973) ("our refusal to grant a hearing in a particular case is to be given *no* weight") (emphasis in original); Cal.Ct.R. 28 comment. Because, as Witkin notes, a refile order is nothing more than a delayed denial of hearing, it cannot be treated as a ruling on the merits.[2]

When the supreme court issued its refile order in *Rhymes*, it simultaneously re-tained jurisdiction over *Myers* precisely in order to answer the question of retroactivity. Under these circumstances, it makes absolutely no sense to suggest that the *Rhymes* order itself was a decision on the merits of retroactivity. Nonetheless, the majority holds that the California Supreme Court decided sub silentio in a one-sentence, four-justice, refile order an issue it had explicitly left open in a previous decision, and then turned around and reversed itself in a full written opinion. I am unable to agree.

## II

That should be the end of the matter as far as this court is concerned; there is no need for us to inquire into the reasons that the California Supreme Court decided to resolve retroactivity in *Myers* rather than *Rhymes*. As long as the refile order in *Rhymes* was not a retroactive application of *Harris*, which it was not, it is none of our business why the California Supreme Court chose to resolve the question in one case rather than another. Nonetheless, to the extent that the supreme court's motive matters, an examination of the facts of this case reveals a perfectly rational explanation, one consistent with equal protection.

*Rhymes* and *Myers* both arose before the supreme court's decision in *Harris*, and both presented the *Harris* issue. Thus, either case *could* have been used to decide retroactivity, but only one was necessary to do so. The obvious choice was *Myers*. This was a death penalty case; by statute the California Supreme Court was required to hear Myers's appeal. See Cal.Penal Code § 1239(b) (West, 1989); *Myers*, 43 Cal.3d at 255, 233 Cal.Rptr. 264, 729 P.2d

---

2. The majority also finds support for the proposition that the refile order was a ruling on the merits in *People v. Osuna*, 187 Cal.App.3d 845, 232 Cal.Rptr. 220 (1986). However, the court of appeal's offhand remark in *Osuna* will not carry the burden the majority places on it. In *Osuna*, the California Supreme Court retransferred the case to the court of appeal "with directions to refile its opinion with appropriate reference to *People v. Duncan* (1986) 42 Cal.3d 91, 227 Cal. Rptr. 654, 720 P.2d 2." *People v. Osuna*, 231 Cal.Rptr. 756, 727 P.2d 1037 (1986). The court of appeal had to figure out whether these directions were intended to change the outcome of the case. Attempting to interpret the su-

preme court's Delphic order, the court of appeal no doubt reasoned that the supreme court would have been more explicit had it intended to change the outcome. See *Osuna*, 187 Cal. App.3d at 847, 232 Cal.Rptr. 220.

The court of appeal—to the extent that its interpretation was correct—was not, as the majority suggests, saying that the refile order was a ruling on the merits. It was certainly not saying that such orders are intrinsically procedural or substantive. The majority relies on a stray remark made by a lower court trying to puzzle out what its superior court wanted it to do, hardly the stuff of which precedent is made.

698. Moreover, *Myers* presented other questions besides the *Harris* issue. See *Myers,* 43 Cal.3d at 256, 233 Cal.Rptr. 264, 729 P.2d 698. *Rhymes,* on the other hand, was a collateral attack on a misdemeanor conviction, and presented the *Harris* issue alone. See *Rhymes,* 170 Cal.App.3d 1100, 217 Cal.Rptr. 439. Since the California Supreme Court had to hear *Myers* anyway, deciding the retroactivity issue in *Rhymes* would have been redundant and a waste of judicial resources. Consequently, the court sent *Rhymes* back down without review.

I suppose the supreme court could have held *Rhymes* pending a decision on retroactivity in *Myers,* but there were very good reasons for not doing so. At the time her appeal was pending in the supreme court, Deborah Rhymes was awaiting a new trial. Delay is a corrosive factor in a criminal case, potentially prejudicing the rights of the prosecution as well as the defendant. If Rhymes was to be retried—which was certainly a live possibility at the time *Myers* was set for argument—it needed to be done as promptly as possible, before the evidence grew stale and witnesses died or disappeared.[3] At the same time, *Myers*—a death penalty case—raised a number of additional issues, and was likely to take a long time to decide. In fact, a year and a half passed between the remand order in *Rhymes* and the supreme court's decision in *Myers.* The court therefore had a rational, indeed prudent, basis for sending *Rhymes* back for immediate trial.

The reasons for sending *Rhymes* back were particularly compelling, precisely because the court of appeal had anticipated the supreme court's ruling in *Harris.* While it may have been constitutionally permissible for the California Supreme Court, in a strict application of non-retroactivity, to deny *Rhymes* the benefit of a court of appeal ruling eventually proven to be correct, it would certainly have been a harsh result. I respectfully submit that the California Supreme Court is not guilty of a violation of equal protection by reserving the retroactivity question while allowing Rhymes to return to municipal court for a new trial.

The Equal Protection Clause does not require perfect equality, merely a rational decision in light of the information available to the decision maker. What the California Supreme Court did here evinces a rational, deliberate decision to deal with two litigants who were, at the time, in unequal situations. The Constitution requires no more.

## Conclusion

The jurisdiction of the California Supreme Court, like that of other supreme courts, is largely discretionary; it need not decide every case that comes before it. It is also the court of last resort on questions of California law, and thus serves a function well beyond the resolution of individual cases; its primary function is to shape the law for the most populous state in the nation. Not surprisingly, a decision not to decide a case may reflect considerations independent of the merits of the dispute.

In a federal system, it behooves national courts to display considerable reticence before invading this domain. When a state supreme court takes a coherent series of actions, each amply justified by the situation confronting it, the federal courts have no business getting involved. I fear that today's decision will seriously—and unnecessarily—complicate the already difficult task of the California Supreme Court and the eight other supreme courts in our circuit.

---

**3.** Delay will also be a corrosive factor in Venson Myers's case. On the basis of a one sentence refile order in a different case, the majority reverses a conviction for first degree murder and several other violent crimes, a conviction affirmed by the state's highest court. *Myers,* 43 Cal.3d at 276, 233 Cal.Rptr. 264, 729 P.2d 698.

These crimes took place nearly eleven years ago. *Id.* at 255, 233 Cal.Rptr. 264, 729 P.2d 698. Presenting evidence at trial will now be more difficult for both sides, although the prosecution, because it carries the burden of proof, probably will suffer the greater prejudice.