PATRICK HENRY LIZOTTE, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 15203

June 20, 1986                                    720 P.2d 1212

*Morgan D. Harris,* Public Defender, *Robert H. Thompson,*
Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert J.
Miller,* District Attorney, *Melvin T. Harmon,* Deputy District
Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

On March 19, 1982, Patrick Henry Lizotte, a high school
student, entered his psychology class, pointed a gun at his teacher
and killed him. After shooting the teacher, Lizotte walked out of
the classroom and shot and wounded two of his fellow students.
Lizotte himself was later shot and wounded during his capture by
police officers.

After his arrest, three court-appointed psychiatrists examined Lizotte and concluded that he was psychotic at the time of the shooting and that he was not mentally competent to stand trial. After being declared incompetent to stand trial by the district court, Lizotte was committed to the custody of Lake's Crossing Center, an institution for mentally disordered offenders.

At Lake's Crossing a course of chemical treatment was instituted involving the use of an antipsychotic drug called Navane. As a result of this treatment Lizotte's mental state changed, and some eleven months after the shooting episode he was determined by the court to be competent to assist his attorney and proceed to trial. Throughout the trial Lizotte continued to be treated with Navane.

Lizotte's sole defense was that he was insane at the time he shot the teacher and students. Conflicting psychiatric testimony was presented. Lizotte did not testify. The jury found Lizotte guilty of murder with the use of a deadly weapon and of two counts of attempted murder. He was sentenced to two consecutive life sentences without possibility of parole for murder with use of a deadly weapon and to an additional sixty years imprisonment for the attempted murders.

On appeal Lizotte claims that the state required him involuntarily to be in a drugged condition before and during the trial and that this denied him a fair trial. Because of failure to preserve the claimed error by bringing it properly to the attention of the trial court, we affirm the conviction.

In the record before us there is only one formal motion made to the court relating to cessation of drugs. This motion was made and filed on April 11, 1983, one month before trial. This motion sought "an order discontinuing the involuntary medication provided to the defendant." The only ground stated was the conclusion by Lizotte's counsel that Lizotte "should be free of drugs and medication *prior* to trial." (Emphasis supplied.) No motion was made during trial, and none after.

The problems with the one motion that was filed are: (1) no name, description, or reference to the effect of the drug was given; (2) there was no affidavit or other factual support that the drug was being involuntarily administered; (3) the moving papers specify that the relief requested was for the period *prior* to, not during, trial; (4) no legal grounds or points and authorities were presented; and (5) no oral argument was presented by defense counsel at the time set.

We are generally willing to overlook minor procedural flaws, but it remains a necessity of appellate review that the district judge be given a chance to rule on the legal and constitutional

questions involved rather than being asked, without a statement of legal grounds, merely to discontinue some unidentified drug prior to trial without specifying the supposed involuntary nature of the drug ingestion.

It is noted that the district judge *invited* but did not receive a proper application for relief. The drug question was first brought up informally on February 28, 1983. No motion or ruling was made, however. On March 23, 1983, at a hearing on another matter the question was again raised informally when defense counsel expressed an objection to his client's "being given medication or drugs, to keep him drugged during the trial or whatever." At this time the court suggested that "perhaps [counsel] could articulate some reason for the court to prescribe if medical treatment should be discontinued. Until that time, I think its speculative."

We must agree with the trial judge that until the nature and effect of the drug is made known to the court, until the involuntary nature of administration of the drug is established on the record, and until some legal basis for the motion is expressed, the informal complaints of counsel must be considered as merely "speculative."

The mentioned motion was denied on April 13, 1983. The subject of drugs did not come up again until May 9, 1983, which was the day before the trial began. A substitute judge appeared on the scene on this date. The substitute judge made it clear that he would take no dispositive action other than setting the case over for trial on the next day. Defense counsel again referred to "involuntary heavy medication" being given to his client, but made no motion, and no action was taken by the court. The matter was never brought up again.

We are constrained to conclude that no proper request by motion or otherwise was ever made to effect cessation of mind-altering drugs either to permit Lizotte "to appear and be present" at trial or to present himself in his natural state as part of the insanity defense or for any other stated constitutional or legal reason.

Failure to assert these rights is much more than a mere "technicality." In our reviewing function we must insist that the trial judge have a reasonable opportunity to consider fairly and rule on matters brought before the court by defense counsel. This simply was not done here; still, we have gone further and sifted through the entire record in an attempt to find on our own any indication that Lizotte was treated unfairly.

Lizotte's counsel argues in his brief that his client sat motionless during trial, made no statements, and did not testify. The record itself, however, does not reveal that Lizotte's appreciation

of the events of the trial was in any way diminished by the medication, and it does not appear that he was, by reason of any mental condition related to drug ingestion, denied his right to a fair trial. He may have had the right not to be forced to take the drugs, but that right was not timely asserted or properly brought to the attention of the court. There is no basis for finding from the record itself that Lizotte was denied the right to "appear and defend" in person or that he was denied a right to a fair trial.

As stated, Lizotte did not testify. Neither did he, during trial, request of the trial judge the right to appear in his undrugged state. A reading of the record fails to disclose inherent unfairness. The jury did get an opportunity to see Lizotte in his psychotic phase in a videotaped interview. Absent denial of an express request for an opportunity to be viewed physically in his undrugged state, there is no unfair treatment manifest in the record in this regard.

Other claims of error are without merit. Finding no prejudicial error in this record, we affirm the convictions.

MOWBRAY, C. J., and SPRINGER, GUNDERSON, and STEFFEN, JJ., concur.