JOHN WILLIAM IVERSON, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 20346

March 7, 1991                                   807 P.2d 1372

*Terri Steik Roeser,* State Public Defender, and *Janet Bessemer,* Deputy Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Noel Waters,* District Attorney, Carson City, for Respondent.

## OPINION

By the Court, Rose, J.:

The appellant, John William Iverson (Iverson), contends that he was denied equal protection of the law in violation of the United States Constitution because he was sent to prison rather than to a secure mental health facility as a wealthier person may have been. We conclude that no factual basis has been made to show that the psychiatric facility at the Nevada State Prison is inadequate or that the difference between the Nevada facility and other facilities to which Iverson could have been admitted if able to pay were substantially different. We further conclude that Iverson entered his guilty plea to fourth degree arson freely and voluntarily, that he understood the nature of the charge against him and that he was sane at the time he committed the offense.

## FACTS

On March 16, 1988, John Iverson set fire to his parents' mobile home, which was totally consumed in the fire. He admitted to four witnesses that he had burned the house by pouring kerosene inside and lighting it with a match. He then went outside and pretended he did not do it. During the arson investigation, Iverson informed the police that he poured kerosene all over the house and set it afire because he saw the image of Satan and wanted to protect his family.

At the scene of the fire, Iverson was acting strangely and his father informed the police that Iverson had a long history of mental illness and had made frequent threats of violent acts. Because of Iverson's evident mental disturbance and past history, he was admitted to the Nevada Mental Health Institute for protective custody and observation. He remained there until his arrest on felony arson charges on October 11, 1988, when he was then placed in Lake's Crossing for the mentally disordered offender. Iverson conditionally waived his preliminary hearing so that a competency hearing could be held in district court. Prior to this hearing, Dr. Henson, a psychiatrist, conducted an in-depth review of Mr. Iverson's medical history and interviewed him. Mr. Iverson had been treated in eight mental health institutions and was diagnosed as a paranoid schizophrenic.

At the competency hearing, Dr. Henson unequivocally testified

that Mr. Iverson knew the nature of the criminal charges and proceedings against him and was not insane. The director of Lake's Crossing was also prepared to testify about Iverson's competence and sanity, but Iverson's attorney objected because he was not a psychiatrist as required by NRS 178.415. The competency hearing was continued to secure a second psychiatric opinion. When filed with the court, the second psychiatric opinion concurred with all of Dr. Henson's conclusions.

On May 15, 1989, an arraignment and change of plea hearing pursuant to negotiations was held. At that time, Iverson acknowledged signing a plea bargain memorandum and stated that he wanted to plead guilty to fourth degree arson. The court canvassed Mr. Iverson concerning his constitutional rights and how he felt that day. The court then found that the guilty plea to fourth degree arson was knowingly and intelligently entered and that Iverson had an understanding of what was transpiring in spite of some mental problems that he had. The plea bargain memorandum that Iverson signed stated the elements of fourth degree arson, the possible punishment for this crime and a waiver of his constitutional rights. When the court inquired, Iverson stated that he had poured gasoline inside the trailer and then left the heater on. In addition to the admissions in the plea bargain memorandum, he admitted that the fire was his fault.

It is obvious that Iverson and his attorney were hopeful that the sentence imposed would confine Iverson to a drug and alcohol abuse center or an appropriate mental health facility rather than prison. However, the district court was very careful to ascertain that no such promise of placement in a drug abuse center or other mental health facility was made to him.

> THE COURT: Anybody else told you anything about this case, what's going to happen if you plead guilty?
> THE DEFENDANT: If I got plea bargain, I might be able, instead of going to prison, I might be able to go to the drug rehab or the drug and alcohol abuse center, sir.
> THE COURT: That's a possibility. But you realize that I can sentence you to prison if I want. You do understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Has anybody said you're not going to get — you're going to automatically get probation or going to go, get any kind of special treatment?
> THE DEFENDANT: No.
> THE COURT: You understand all that?
> THE DEFENDANT: Yes, sir.

Iverson was returned to Lake's Crossing until the sentencing hearing. The parole and probation report recommended that Iverson receive a five year prison sentence, primarily because

there was no other viable alternative. Iverson's attorney requested a continuance so that the alternative placement of Iverson in a psychiatric or mental health facility could be explored. The court observed that Lake's Crossing in Reno is for the criminally insane and to assist a person to become competent to stand trial. However, once the person is found guilty or pleads guilty to a felony offense, he is no longer eligible for residence or treatment at Lake's Crossing. The court succinctly stated the problem:

> THE COURT: Well, I tell you very frankly I'm not inclined to put this gentleman in prison. But by the same token, it's the biggest problem we have in the State of Nevada. What do we do with people who have significant mental illnesses who need their freedom restricted, but we don't have any funds for it, we don't have any facilities for it.

The district court continued the sentencing hearing to permit the defense time to locate an alternate facility for Iverson and for a second evaluation to be made of him at Lake's Crossing.

During the next two weeks, defense counsel was unable to find a public facility willing to accept Iverson. A psychologist at the Washoe Tribe Health Clinic could not find a long-term public treatment facility willing to accept Iverson and he recommended that Iverson be placed in the halfway house program at the Nevada Mental Health Institute.

On July 24, 1989, the court conducted the final sentencing hearing. Based on the second evaluation, the court again found Iverson able to assist counsel and competent to plead guilty. The court reluctantly sentenced Iverson to five years in the Nevada State Prison because the defense had been unable to find a treatment facility and because the court considered Iverson too dangerous to be immediately released on probation. The district court clearly stated the dilemma it faced in sentencing Iverson.

> THE COURT: . . . I find you guilty of the fourth degree arson, Mr. Iverson. I tell you that this is one of the most disturbing cases I've had because the State of Nevada has, in my estimation, an obligation to provide some type of facility for a young, primarily young men and occasionally young women in your situation, and we don't have. We haven't even approached the idea of treatment.
>
> The other side of the coin is, Mr. Iverson, . . . when you are not under medication, you're a real danger to people because you just get off, so far off very quickly and you end up ingesting substances. . . . But there's no place to treat that in Nevada.
>
> . . . .

The only choice I have in Nevada, unfortunately, is incarceration to prevent that danger, and it's a terrible choice.

I sentence you to five years in Nevada State Prison, . . . and I recommend . . . on the sentence that the Nevada Department of Prisons consider a transfer to Atascadero or other appropriate facility dealing with mentally disturbed offenders to get some type of treatment.

Iverson has appealed to this court asserting that his constitutional right to equal protection was violated when the district court sentenced him to prison rather than a psychiatric treatment facility because no such public institution was available. No claim is made by Iverson that he was not competent to enter a guilty plea to fourth degree arson, that the court acted improperly in accepting the plea, or that he was legally insane at the time he set the fire.

## LEGAL DISCUSSION

### I. *Iverson's sanity and competence.*

All of the evidence in the record unequivocally establishes that although Iverson had serious mental problems, he was not insane at the time he set fire to the trailer. Iverson does not claim he was insane at the time of the incident. We address this issue only because the dissent suggests that this case should be remanded and disposed of as a civil rather than a criminal matter. Given the uncontradicted evidence that Iverson is sane, it would be improper to reverse because he is insane, let alone direct that the matter be disposed of civilly.

The dissent also claims that Iverson was synthetically lucid at the time he pleaded guilty and therefore presumably not competent to enter his plea of guilty. The record again belies this assertion. The district court asked Iverson if he was taking any medication when he entered his guilty plea and he indicated that he was taking Stelazine, Propranolol, Lithium and "a heart pill." Further inquiry was made about the effects of these drugs on Iverson and he stated that they reduced his mental and emotional problems, and made him relax. The record contains ample evidence that Iverson's medication prevented the more severe effects of paranoid schizophrenia and that Iverson suffered mental problems when he did not take his prescribed medication. When the record fails to reveal that a defendant's appreciation of the events of trial was diminished because of medication, the result below will not be disturbed. Lizotte v. State, 102 Nev. 238, 720 P.2d 1212 (1986). All of the evidence in the record indicates that

Iverson's medication helped him and that he freely, voluntarily and knowingly entered his plea of guilty.

The dissent also claims that Iverson did not understand the nature of the charges against him. Once again, the record does not support this claim. The plea bargain memorandum which Iverson signed specifically recited the elements of fourth degree arson. Further, the district court read the crime charged in the Information to him and inquired whether Iverson understood the charge. He said he did.

We have held that a trial judge should determine that a defendant understands the nature of the charge against him either by eliciting his statement that he understands the charge or by his admission of the facts constituting the offense. Bryant v. State, 102 Nev. 268, 721 P.2d 364 (1986). A determination of whether the defendant understood the nature of the charge will be made by using the totality of the circumstances approach, whether the facts are contained in the plea canvas or at other stages of the proceedings. *Id.* at 270, 721 P.2d at 366. Here, Iverson demonstrated his understanding of the charge against him in the plea bargain memorandum and in his statements to the court. While a more detailed statement in court of the facts of the crime is preferable, Iverson's statement when he pleaded guilty, coupled with his acknowledgement of the elements of the crime in the plea bargain memorandum, satisfy our requirement set forth in *Bryant.*

Iverson and his attorney knew that although he had a history of serious mental illness, all the psychiatrists and psychologists would testify that he was both competent to stand trial and sane. Given every prospect that Iverson would be found guilty of first degree arson at trial, the negotiated plea bargain to fourth degree arson was apparently the best Iverson could accomplish. The hope was that he would be sentenced to a mental health facility. Iverson acknowledged that while this was his preference, no promise of such sentence was made to him and he was aware that he may well be sent to prison. We find no fault with the tactical decision made by Iverson and his attorney in choosing this course of action. Often the best interests of a defendant lie in a negotiated disposition of the charge against him or her.

II. *Iverson's violation of equal protection claim.*

Iverson contends that if he had been insured or wealthy the court would have allowed him to enter a private secure facility at his own expense in lieu of prison. He contends that this situation caused him to be imprisoned, as well as excluded from the

treatment alternative, solely on the basis of his indigence, in violation of the equal protection clause of the United States Constitution. In support, Iverson cites to a line of cases prohibiting incarceration solely due to a defendant's inability to pay a fine or a fee. *See, e.g.,* Beardon v. Georgia, 461 U.S. 660 (1983); Elam v. Municipal Court of Oklahoma City, 757 P.2d 1338 (Okla.Crim.App. 1988). We find these cases neither on point nor persuasive.

Based on the record, we agree that the district court may well have permitted Iverson to enter a private facility with adequate security if Iverson had been able to afford such treatment. The inequities that arise between the affluent and those of more modest means will always be with us. However, this does not mean that a constitutional deprivation of rights has occurred.

We share the district court's concern over Mr. Iverson's plight and over the lack of facilities in this state for the guilty but mentally ill criminal offender who is a security risk. It is ironic that the institute for the criminally mentally ill in Nevada will accept an accused and strive to make him or her competent to stand trial, yet it will reject the same person once he is adjudged guilty of a felony.

Nevertheless, we cannot conclude that Iverson's prison sentence violates the equal protection clause of either the United States or Nevada Constitution. The record contains no showing of what the psychiatric treatment facilities are at the Nevada State Prison, let alone that they are inadequate relative to other facilities where Iverson desired to be placed; or even that the prison facility where he is now confined is so deficient as to raise a colorable issue that Iverson has been denied equal protection of the law.

## CONCLUSION

Iverson was competent to enter a plea of guilty, understood the charges against him, and knowingly entered his plea of guilty to fourth degree arson. Viewing the totality of the circumstances as reflected in the record, including the plea bargain memorandum and Iverson's various statements admitting guilt, the court properly accepted Iverson's guilty plea. Every expert opinion was that Iverson is legally sane. Iverson makes no claims otherwise in his appeal.

There has been no showing that Iverson was deprived of equal protection of the law. Nowhere in the record is it established that the psychiatric facilities at the Nevada State Prison are in any way inadequate to treat Iverson. Additionally, no evidence was presented about other private facilities that might be available to

Iverson had he had the funds to pay to enter them or how they would be better than those provided by the State of Nevada. Therefore, there has not been a threshold showing made upon which to base a claim of failure to provide Iverson with equal protection of law.

Accordingly, the judgment and sentence against Iverson is affirmed.

MOWBRAY, C. J., STEFFEN and YOUNG, JJ., concur.

SPRINGER, J., dissenting:

Iverson has been sent to prison to be "punished" (NRS 205.025) for committing the crime of arson by burning his parents' home; yet, everyone knows[1] that Iverson was not guilty of "willful" (NRS 205.025) or criminal burning of his parents' home.

After his arrest Iverson told police that the fire had been set by a certain robot that had taken charge of him—a robot that had been commanded to burn his parents' home in order to protect them from some imaginary harm. Iverson, described in the record as being "profoundly mentally ill," has been hospitalized for his mental disorders at least nine times, and is mentally retarded and schizophrenic. There is little or no possibility that either Iverson or the robot burned his parents' home with any malicious or criminal intent.

After his arrest Iverson was placed on what is described in the record as a "very high dose of psychotropic medicine." Iverson was drugged into a state of temporary and synthetic sanity, and was brought to court in that state so that he could plead guilty. At his plea hearing, Iverson had forgotten entirely about the robot and Satan and all that and at his plea hearing apparently believed that he had "left the heater on" and that "it must have, fumes or something, must have exploded on the heater."

---

[1]The trial judge was obviously painfully aware of the injustice in this case. He asked the rhetorical question: "What do we do with people who have significant mental illnesses who need their freedom restricted, but . . . we don't have any facilities for it[?]." The judge's answer to his own question was this:

> The only alternative I can see is some kind of residential program followed by some kind of a handle to make sure that Mr. Iverson does what is in his best interests, that he maintains his medications, that he maintains things so if, so if he's beginning to slip a little bit, we can pick him up, hold him under my order until we can get him evaluated again. That's what I want to do.

This is what the judge wanted to do but not what he did. Under the circumstances he believed that "[t]he only choice I have in Nevada, unfortunately, is incarceration to prevent that danger, and it is a terrible choice."

The court questioned Iverson's attorney at the plea hearing. She advised the court that although there was a time when she had been "under the impression that he did not know, have a sense of what was happening," at the time of the plea hearing (although she had only talked to him "momentarily"), she noticed a "significant difference" in his condition, namely that "he appears to be more comfortable, he's more lucid than he was previously." Asked by the court if "he understands the process today," Iverson's attorney answered, "I think he does." The plea hearing then continued on.

Assuming that Iverson was truly "lucid" (something a reading of this record makes me doubt very much), no questions were asked by the court or Iverson's counsel about why Iverson now thought that the fire was caused by a heater mishap rather than by a robot. The court advised Iverson:

> Now, when you enter a plea of guilty to me, Mr. Iverson, you admit that on about the date in question you were involved in a fourth degree arson,[2] which is the burning of a, of a structure.

He was not asked about whether he "willfully and maliciously attempt[ed] to set fire" to his parents' home. It is certainly not fourth degree arson merely to leave a heater on so that, as Iverson put it to the court, "fumes or something must have exploded on the heater."

I know it was not raised by the attorney who represented Iverson at the hearing, but it should be obvious to anyone who reads the transcript of this hearing that the synthetically "lucid" Iverson who was pleading guilty in this case had no recollection of the robot that he had previously blamed for setting the mobile

---

[2]NRS 205.025 provides as follows:

205.025 Fourth degree.

1. Any person who willfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any of the buildings or property mentioned in NRS 205.010, 205.015, and 205.020, or who commits any act preliminary thereto or in furtherance thereof, shall be guilty of arson in the fourth degree and be sentenced to imprisonment for not less than 1 year nor more than one-half of the longest term prescribed upon a conviction for the commission of the offense attempted, and may be further punished by a fine of not more than $5,000.

2. In any prosecution under this section the placing or distributing of any inflammable, explosive or combustible material or substance, or any device in any building or property mentioned in NRS 205.010, 205.015, and 205.020, in an arrangement or preparation eventually to set fire to or burn such building or property, or to procure the setting fire to or burning of such building or property, shall be prima facie evidence of a willful attempt to burn or set on fire such property.

home afire.[3] The lower court's handling of Iverson's plea in this manner clearly ran afoul of the United States Supreme Court's holding in Henderson v. Morgan, 426 U.S. 637 (1976). In *Henderson,* a mentally retarded defendant pled guilty to second degree murder, but was not informed by the trial court that intent to cause death was an essential part of this crime. *Id.* at 646. In addition, defendant made no factual statement at the plea hearing that would imply that defendant had such intent. *Id.* The Court reversed this conviction, holding that because defendant did not receive "real notice of the true nature of the charge against him," the plea was involuntary and the conviction was entered in violation of due process of law. *Id.* at 645; *see also* Dubose v. State, 100 Nev. 339, 340, 682 P.2d 195, 196 (1984); NRS 174.035(1).

These authorities clearly require reversal in this case. The trial court never explained to Iverson the mental elements of fourth degree arson: "willful and malicious." In addition, Iverson made no factual statement at the plea hearing that would have implied that the burning was willful—in fact, the statements made by Iverson at this hearing seem to indicate that the burning was *accidental.* Thus, Iverson never received "real notice of the true nature of the charge against him," and his conviction was in violation of due process.

Whether the fire in question was the result of the accident described by Iverson at the time he pleaded guilty to fourth degree arson, or the result of the diabolical intervention of a robot, it is obvious that the record in this case does not support a felony arson conviction nor five years' punishment in prison. I would set aside the arson conviction and return this case to the district court for a civil rather than a criminal disposition of this profoundly mentally ill man. This conviction cannot stand.

---

[3]Where issues of constitutional dimension are presented, this court has often stated that, as long as an adequate record for review exists, these issues may be addressed on their merits. *See, e.g.,* Koenig v. State, 99 Nev. 780, 787 n.5, 672 P.2d 37, 42 n.5 (1983).