**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTOPHER C. LITTLE,
       *Petitioner-Appellant,*

v.

JACQUELINE CRAWFORD; FRANKIE
SUE DEL PAPA,
       *Respondents-Appellees.*

No. 05-15364

D.C. No.
CV-98-00394-DWH

OPINION

Appeal from the United States District Court
for the District of Nevada
David W. Hagen, District Judge, Presiding

Argued and Submitted
December 7, 2005—San Francisco, California

Filed June 8, 2006

Before: Alex Kozinski and Barry G. Silverman,
Circuit Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Benitez

---

*The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

## COUNSEL

John C. Lambrose, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Victor-Hugo Schulze, II, Deputy Attorney General, Las Vegas, Nevada, for the respondents-appellees.

## OPINION

BENITEZ, District Judge:

Christopher Little, a Nevada state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Little challenges his plea to two counts of sexual assault on a minor under fourteen. He is now serving two consecutive life terms with the possibility of parole.

Little claims that: (1) he suffered ineffective assistance of counsel; (2) he was impaired by medications when he entered his plea and his counsel failed to investigate and inform the court of the same; (3) his plea was not knowing and voluntary; (4) he was denied counsel at a contested hearing in juvenile court; and (5) the Nevada Supreme Court violated his equal protection rights by failing to apply its existing case law to him. The district court found claim (1) was procedurally barred from review, and denied the remaining claims on the merits.

The district court then certified claim (5)—Little's equal protection claim—for appeal and denied Certificate of Appealability as to the remaining claims. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and affirm. Because reasonable jurists would not find the district court's assessment of Little's uncertified claims debatable or wrong, we decline to expand the Certificate of Appealability as to those claims. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for Little's equal protection claim, we find that the state court's denial of that claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

# I.

## *BACKGROUND*[1]

In early 1990, Little was charged with multiple counts of sexual assault of his daughter and son.[2] Little decided to plea guilty. After a lengthy plea canvass, Little pled to sexually assaulting his daughter, and forcing his son to have sex with his daughter. Little also admitted to committing these acts when his children were under 14. In exchange, the state promised to dismiss four other counts at sentencing.

At the time of Little's offense, under Nevada Revised Statutes ("NRS") 176.185(1), a person convicted of sexual assault was ineligible for probation. *See* 1989 Nev. Stat., ch. 790, § 11, at 1887.[3] The statutory sentence was life with the possibility of parole in ten years. In October 1990, Little was sentenced to two consecutive life terms with the possibility of parole after ten years.

Little did not directly appeal his conviction. Instead, in 1991, Little filed a state petition for post-conviction relief in the Nevada state district court. There, as related to this appeal, he claimed that his plea was not knowing and voluntary because he was not advised his offense was non-probational. The Nevada state district court denied Little's claim because Little's "concern at the plea hearing was not that he was fac-

---

[1]Many of the facts and proceedings come from the state courts' decisions and our own independent review of the record. Many of the relevant facts are undisputed, and the state court's factual findings are adequately supported by the record. *See Tinsley v. Borg*, 895 F.2d 520, 524-25 (9th Cir. 1990) ("[T]he state court's findings are entitled to a presumption of correctness on federal habeas corpus review. This rule applies to the factual findings of both state trial and appellate courts.").

[2]Because of the victims' ages and the crimes committed against them, they will not be referred to by their actual names.

[3]The current provision precluding probation for persons convicted of sexual assault is NRS 176A.100(1)(a).

ing non-probationable life sentences, but only that they run concurrent." Then, applying the totality of the circumstances test under *Bryant v. State*, 721 P.2d 364 (Nev. 1986) (per curiam), the court found Little's plea was not coerced and Little "was thoroughly canvassed . . . regarding his case, relevant law, the plea bargain and potential sentence." In 1992, Little appealed that decision to the Nevada Supreme Court. That court found that although Little was not told he was ineligible for probation, his plea was knowing and voluntary because "the record show[ed] that [Little] was warned that he would have to spend ten years in prison at a bare minimum."

Little next filed a state petition for habeas relief in the Nevada state district court, which was denied. Little appealed that denial to the Nevada Supreme Court. The Nevada Supreme Court dismissed the appeal on procedural grounds.

Little then filed his first federal habeas petition. But because his petition contained an unexhausted claim, Little voluntarily dismissed his petition so that he could exhaust that claim by returning to state court.

Little then filed a "petition for extraordinary writ" with the Nevada Supreme Court, raising his unexhausted claim that he "was denied Equal Protection under . . . the 14th Amendment, when the Nevada Supreme Court did not apply the law to him in the same manner as to others similarly circumstanced." Specifically, Little asserted, the Nevada Supreme Court had vacated other defendants' pleas when they were not told that probation was not available, while denying him the same relief. On May 22, 1998, the Nevada Supreme Court summarily denied the petition.

The instant petition followed. After reviewing Nevada's caselaw on advising defendants that their sentences were non-probational, the federal district court appointed counsel for Little and certified the following question to the Nevada Supreme Court: "Is a conviction of sexual assault infirm when

it is based on a guilty plea in which the defendant was advised of the mandatory minimum sentence but was not advised that the crime was nonprobationable? (*See Meyer v. State*, 95 Nev. 885 (1979); *Aswegan v. State*, 101 Nev. 760 (1985); *Skinner v. State*, 113 Nev. 49 (1997))." Little filed a brief and a supplemental brief, which included the transcript of his change of plea hearing as an exhibit.

The Nevada Supreme Court answered:

> [T]he [trial] court's failure to advise a defendant that he was ineligible for probation does not warrant reversal where the totality of the circumstances demonstrate that the defendant was aware, at the time he pleaded guilty, that he would be serving an actual prison term because he was ineligible for probation.

*Little v. Warden*, 34 P.3d 540, 546 (Nev. 2001) (en banc) (per curiam). In so answering, the Nevada Supreme Court affirmed its prior holdings that "a defendant must be aware that his offense is nonprobational prior to entering his guilty plea because it is a direct consequence arising from the plea." *Id.* at 542. But the court "emphasize[d] that in considering whether a particular defendant was aware that he was ineligible for probation, [the Nevada courts] need not and do not focus on 'talismanic phrases.' Rather, [the courts] review the entire record and consider the totality of the facts and circumstances surrounding the plea in order to ensure that a defendant was aware that his offense was nonprobational." *Id.* The Nevada Supreme Court acknowledged some confusion in its caselaw, but held that:

> To the extent that *Meyer*, *Heimrich*, and *Aswegan* support a contrary proposition—that the district court's lack of advisement on the record about nonprobationality is "manifest error," a "fatal defect", or otherwise reversible as a matter of law—they are hereby overruled. We modify *Meyer* and its progeny

> in this regard—the district court's failure to advise a defendant that he is ineligible for probation is error, but it is not always reversible error.

*Id.* at 544.

The Nevada Supreme Court also acknowledged Little's equal protection argument: "In the [federal] petition, [Little] argued that his right to equal protection had been violated because this court treated him differently than other persons convicted of sexual assault by failing to apply its existing case law to him." *Id.* The court then concluded that the relief Little requested was not warranted. *Id.* at 546 n. 39.

After the Nevada Supreme Court's decision, Little's present petition was reopened. In December 2004, the district court denied the petition and certified Little's equal protection claim for appeal. This appeal followed.

## II.

### *STANDARD OF REVIEW*

We review *de novo* the district court's decision to grant or deny a 28 U.S.C. § 2254 habeas corpus petition. *See Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004), *cert. denied*, 126 S. Ct. 484 (2005). Because Little filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its provisions apply. *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003). Under AEDPA, a petitioner is entitled to habeas relief only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

## III.

### *DISCUSSION*

In state court, Little argued that his plea was not knowing and voluntary, in part, because the trial judge did not inform Little on the record that he was ineligible for probation. The Nevada Supreme Court denied Little's claim because "the record show[ed] that [Little] was warned that he would have to spend ten years in prison at a bare minimum." Little claims the Nevada Supreme Court denied him equal protection because it failed to apply its existing case law to him. As support, he relies on the Nevada Supreme Court's decisions in *Meyer v. State*, 603 P.2d 1066 (Nev. 1979), *Aswegan v. State*, 710 P.2d 83 (Nev. 1985) (per curiam), and *Skinner v. State*, 930 P.2d 748 (Nev. 1997) (per curiam). In these cases, the Nevada Supreme Court set aside the defendants' sexual assault pleas because they were not informed, on the record, that probation was not available for their crimes.

Little presented his equal protection claim in a "petition for extraordinary writ" to the Nevada Supreme Court. That court summarily denied the petition: "We have reviewed the documents on file with this court, and we conclude that our intervention [or] . . . relief requested is not warranted. Accordingly, we deny this petition." No other state court issued a reasoned decision on Little's equal protection claim. Thus, on independent review, we find that the state court's conclusion was not an unreasonable application of clearly established federal law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

We first address the Nevada Supreme Court's ruling underlying Little's equal protection claim—Little's plea was knowing and voluntary even though the trial court did not advise him on the record that he was ineligible for probation.[4] We

---

[4]This claim was not certified for appeal. However, the issue is "predicate to an intelligent resolution of the question presented." *Ohio v. Robinette*, 519 U.S. 33, 38 (1996) (internal quotation marks omitted). We thus address it in so far as it relates to Little's equal protection claim.

find that this ruling was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

## A. Little's Plea Was Knowing And Voluntary.

[1] A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing. *See Parke v. Raley*, 506 U.S. 20, 31-34 (1992). Simply put, Little has failed to meet that burden.

In *Boykin v. Alabama*, the Supreme Court established the governing standard for determining whether a plea is knowing and voluntary. 395 U.S. 238, 242-43 (1969).

[2] "A plea is voluntary [and intelligent] only if it is entered by one fully aware of the direct consequences of his plea . . . ." *United States v. Amador-Leal*, 276 F.3d 511, 514 (9th Cir. 2002) (citation and internal quotation marks omitted). "A consequence is 'direct' where it presents 'a definite, immediate and largely automatic effect' on the defendant's range of punishment." *United States v. Kikuyama*, 109 F.3d 536, 537 (9th Cir. 1997) (quoting *United States v. Wills*, 881 F.2d 823, 825 (9th Cir. 1989)); *see also Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988) ("The distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."). Thus, "[b]efore a court may accept a defendant's guilty plea, the defendant must be advised of the range of allowable punishment that will result from his plea." *Id.* at 235 (citation and internal quotation marks omitted). "The essential ingredient is notice of 'the maximum possible penalty provided by law.' " *United States v. Barrios-Gutierrez*, 255 F.3d 1024, 1027 (9th Cir. 2001) (quoting Fed. R. Crim. P. 11(c)).

According to clearly established Supreme Court law, to determine whether a defendant was so advised, we must con-

sider the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 749 (1970).

**[3]** Having done so, we are convinced that his plea was knowing and voluntary. Little was fully advised of his constitutional rights. During the plea canvass, the trial judge conducted a careful and searching inquiry to ensure that Little understood both the charges against him and the consequences of his plea. In response to the court's careful questioning, Little unmistakably affirmed that he had discussed the nature and circumstances of the offense with his attorney; that his attorney had explained the maximum penalty the court could impose; that no promise of reward or special treatment had been made to him (including a promise for a lesser sentence of probation); that he understood the essential allegations of the charge and that his plea was an admission of those elements; that he understood he was giving up his rights to a jury trial and to confront the witnesses against him; and that he was pleading guilty because he was guilty and for no other reason.

**[4]** Little also expressed satisfaction with his attorney's representation, and stated numerous times that he was certain he wanted to plead guilty. The record contains no evidence of coercion. The trial court repeatedly informed Little that he was entitled to a trial. Little declined.

**[5]** The record further shows that Little was alert and responsive to the court's questions and understood the proceedings. Little had an opportunity to discuss the evidence with his attorney and to think about his decision. Moreover, as the state court found, Little "admitted his guilt to Nevada State Welfare, to his wife, to his friend, to the Department of Parole and Probation, and finally to the court." Little does not even attempt to rebut the state court's factual findings. The record further reveals that Little admitted in court that he had sexual intercourse with his daughter and forced his son and daughter to have sex. Little's "[s]olemn declarations in open

court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

**[6]** It is clear that Little was aware that probation was not an option. For example, when asked whether he understood the range of sentences he faced, Little answered "10 years to life." The prosecutor said that was incorrect because Little faced two life sentences, each requiring a minimum of 10 years imprisonment before parole eligibility, so Little faced a minimum of 20 years imprisonment if the court made the life sentences consecutive. The court then stated: "So that could be a minimum of 20 years. The minimum is 20 years" and asked Little, "Do you understand that?" Little answered, "Yes, Your Honor. I was also under the impression by [my attorney] that they possibly may be able to run concurrent." Acknowledging that was correct, the court then warned Little: "[O]n the minimum side you would have to serve at least 10 [years] if the two life sentences ran concurrently before you'd be eligible for parole. Do you understand this?" Little answered, "Yes, Your Honor, I do."

As the state court found: "It appears that [Little] understand [sic] the range of punishment he was facing better than the prosecutor herself: with concurrent sentences, he could possibly have been paroled after only 10 years, and although life sentences may be run consecutively, no one can serve longer than the span of his or her life." Indeed, it appears from the foregoing that Little's concern was largely that his sentences run concurrently. The record does not indicate that Little gave any weight to whether he would be eligible for probation in deciding to plead.

Further, at Little's plea hearing, in support of remanding Little into custody, the prosecutor argued "that [Little] now has admitted to two crimes which will result in his imprisonment for the remainder of his natural life . . . ." The trial court then ruled that "[i]n view of the mandatory penalty and the finding of guilt in this case and the admission of guilt . . .

[t]he defendant is remanded to the custody of the Sheriff
. . . ." In face of these statements, Little remained silent; and
neither Little nor his counsel ever objected.

**[7]** In sum, Little was properly advised of his rights and the
relevant consequences of his plea, including the maximum
punishment he was going to receive. There is nothing in the
record to overcome the presumption that he pled voluntarily
and intelligently. The Nevada Supreme Court's finding that
Little's plea was knowing and voluntary was neither contrary
to, nor an unreasonable application of, clearly established
Supreme Court law.

## B. Little's Equal Protection Claim Also Fails.

Little claims the Nevada Supreme Court denied him equal
protection by failing to apply its existing case law to him. Lit-
tle claims in its 1992 ruling the Nevada Supreme Court should
have set aside his plea because he was not told, on the record,
that he was ineligible for probation. Thus, Little's argument
rests on the proposition that, on or before 1992, the Nevada
Supreme Court *always* found that a plea was *per se* invalid
where the defendant, who was ineligible for probation, was
not so advised on the record and the trial court was required
to use talismanic phrases to ensure a defendant is so aware.
Even if true, Little is not entitled to habeas relief on this basis.

**[8]** Little's claim, at most, amounts to an allegation that in
his case Nevada law was misapplied or that the Nevada
Supreme Court departed from its earlier decisions. Under
clearly established Supreme Court law, such contention nei-
ther gives rise to an equal protection claim, nor provides a
basis for habeas relief.[5] *See Beck v. Washington*, 369 U.S.
541, 554-55 (1962); *see also Estelle v. McGuire*, 502 U.S. 62,

---

[5]Outside the habeas context, the Supreme Court has recognized that
inconsistent application of state law can give rise to an equal protection
claim. *See Bush v. Gore*, 531 U.S. 98, 103 (2000) (per curiam).

67-68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). Stated differently, the Supreme Court has long settled that the Fourteenth Amendment does not assure immunity from judicial error or uniformity of judicial decisions. *See Milwaukee Elec. Ry. & Light Co. v. State of Wisconsin ex rel. City of Milwaukee*, 252 U.S. 100, 106 (1920) ("[T]he Fourteenth Amendment does not, in guaranteeing equal protection of the laws, assure uniformity of judicial decisions."); *see also Central Land Co. of West Virginia v. Laidley*, 159 U.S. 103 (1895).

In *Beck v. Washington*, the Supreme Court refused to find constitutional error in the alleged misapplication of Washington law by Washington courts. The petitioner's "argument under the Equal Protection Clause [was] that Washington has singled out petitioner for special treatment by denying him the procedural safeguards the law affords others to insure an unbiased grand jury." 369 U.S. at 554. In rejecting petitioner's claim, the Supreme Court held:

> [E]ven if we were to assume that Washington law requires such procedural safeguards, the petitioner's argument here comes down to a contention that Washington law was misapplied . . . . We have said time and again that the Fourteenth Amendment does not assure uniformity of judicial decisions . . . [or] immunity from judicial error . . . . Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question.

*Id.* at 554-55 (citations and internal quotation marks omitted) (alterations, except the first, in original).

This Circuit followed *Beck* in *Alford v. Rolfs*, 867 F.2d 1216 (9th Cir. 1989). In *Alford*, the petitioner "argue[d] that

the Washington Court of Appeals denied him equal protection of the laws by treating him differently from other Washington defendants who appeal habitual criminal findings." *Id.* at 1218-19. Petitioner also "refer[red] [the panel] to Washington case law, where defendants appealing habitual criminal findings ha[d] succeeded in obtaining reversal of the findings" under similar circumstances. *Id.* Relying on *Beck v. Washington*, the court found that petitioner's "equal protection claim [was] without merit" *Id.*

**[9]** Against this backdrop, Little cannot establish an equal protection claim warranting habeas relief, simply because, or if, the Nevada Supreme Court misapplied Nevada law or departed from its past precedents. "[A] violation of state law standing alone is not cognizable in federal court on habeas." *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000) (citing *Estelle*, 502 U.S. at 67).[6]

**[10]** Rather, Little must show that the Nevada Supreme Court's decision somehow "violated the Constitution, laws, or treaties of the United States." *See Estelle*, 502 U.S. at 68. This he might have been able to do if the Nevada Supreme Court's alleged error constituted "a fundamental defect which inherently result[ed] in a complete miscarriage of justice," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Short v.*

---

[6]To be sure, Little's claim may also implicate his due process rights. However, even under that analysis, that he "may have shown a variance with the state law . . . is not a federal question. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." *Hughes v. Heinze*, 268 F.2d 864, 869-870 (9th Cir. 1959) (citation and internal quotation marks omitted); *see also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (holding that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process," and that "alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings).

*Garrison*, 678 F.2d 364, 369 (4th Cir. 1982) (citation and internal quotation marks omitted); *see also Estelle*, 502 U.S. at 75. But such circumstances are not present here. As explained above, under clearly established federal due process standards, Little's plea was knowing and voluntary. Were we to find otherwise simply because he was not told that he was ineligible for probation, we would "be exalting form over substance[.]" *Beck*, 369 U.S. at 555. And such a finding would be "contrary to [the Supreme Court's] previous application of the Equal Protection Clause." *Id.* (citation omitted).

Little's reliance on *Myers v. Ylst*, 897 F.2d 417 (9th Cir. 1990), is inapposite. *Myers* held that "once [a state court] has established a rule it must apply it with an even hand." *Id.* at 421 (citation and internal quotation marks omitted). "The equal protection clause prohibits a state from affording one person . . . the . . . benefit of a ruling . . . while denying it to another." *Id.*; *see also Powell v. Ducharme*, 998 F.2d 710, 716 (9th Cir. 1993) ("The Equal Protection Clause prohibits a state from applying a rule of law retroactively in some cases but not others, absent a rational basis for doing so.").

The circumstances in *Myers* are nothing like Little's. In *Myers*, the state court established a rule and applied it retroactively to a case, while refusing to apply the same rule in another identical case. Here, the Nevada Supreme Court had never established that a plea was *per se* invalid where the defendant was not advised on the record that he was ineligible for probation; nor did it require a trial court to use talismanic phrases to ensure a defendant was so aware. Indeed, the opposite is true.

As noted, Little claims the Nevada Supreme Court denied him equal protection because its ruling was inconsistent with its decisions in *Meyer v. State*, 603 P.2d 1066 (Nev. 1979), *Aswegan v. State*, 710 P.2d 83 (Nev. 1985) (per curiam), and *Skinner v. State*, 930 P.2d 748 (Nev. 1997) (per curiam). The Nevada Supreme Court acknowledged that there was some

confusion in its caselaw, and acted to clear it away: "To the extent that *Meyer*, *Heimrich*, and *Aswegan* support a contrary proposition . . . they are hereby overruled. We modify *Meyer* and its progeny . . . ." *Little*, 34 P.3d at 544. We read this statement as an exercise of the Nevada Supreme Court's power to clean up loose language in its prior opinions, not as an admission that Nevada's caselaw was in conflict.

**[11]** In any event, whether a conflict in state caselaw is substantial enough to constitute a violation of the Equal Protection Clause is a federal question, we are not bound by the state's view on the issue. State courts may well choose to cure tensions in their caselaw, and unless those tensions are sufficiently grave, we are not to correct errors of state law on federal habeas review. *See Estelle*, 502 U.S. at 67-68. A close examination of the Nevada caselaw reveals that Nevada's cases were not in sufficiently grave conflict to deny Little equal protection under the federal Constitution.

In *Meyer*, the defendant argued that "his guilty plea was not entered voluntarily and intelligently because he was not informed, on the record, that probation is not available to one convicted of sexual assault." 603 P.2d at 1066. The court agreed, holding that the "acceptance of [defendant's] guilty plea was fatally defective because the record [was] devoid of any indication that [he] was informed that sexual assault is not a probational offense." *Id.* at 1067. *Meyer* then concluded that "when an offense is not probational, the district judge has a duty to insure that the record discloses that the defendant is aware of that fact." *Id.* But the *Meyer* court did not specifically set forth what, if anything, the defendant was told about the minimum or maximum sentence he would have to serve as a result of pleading guilty.

In *Aswegan*, "[p]ursuant to a plea bargain, [defendant] pleaded guilty to four counts of sexual assault." 710 P.2d at 83. On appeal, the defendant "argue[d] that his guilty plea was not entered voluntarily and intelligently because he was

not informed, on the record, that probation is not available to one convicted of sexual assault." *Id.* Relying on *Meyer*, the court held that the "manifest injustice created by the district court's failure to inform appellant that probation was not a possibility in his case may be corrected by setting aside the conviction and allowing appellant to withdraw his guilty plea." *Id.* Like *Meyer*, *Aswegan* did not specifically set forth what, if anything, the defendant was told about the minimum or maximum sentence he would have to serve as a result of pleading guilty.

In *Skinner*, the defendant was charged with sexual assault. 930 P.2d at 749. "During the [plea] canvass, the district court failed to inform [the defendant] that sexual assault was not a probationable offense." *Id.* Thus, defendant argued "that his guilty plea was defective because he was not informed that probation was not available for the crime of sexual assault." *Id.* Relying on *Meyer* and *Aswegan*, the court agreed and remanded the case back to the trial court so that the defendant could withdraw his guilty plea. *Id.* at 750 ("We conclude that pursuant to *Meyer* and *Aswegan*, the district court should have granted Skinner's petition and allowed him to withdraw his guilty plea."). "The state argue[d] that [defendant] knew that probation was not available because the plea agreement said that he understood that he could be imprisoned for a period of not less than five years." *Id.* at 749. The court disagreed:

> This language in the plea agreement is insufficient because it does not affirmatively show that Skinner was informed that probation was not available. Further, an understanding that the minimum sentence for a crime is five years is very different from understanding that probation is not available.

*Id.* at 749.

However, the Nevada Supreme Court did not always find that a plea was *per se* invalid where the defendant was not

advised on the record that he was ineligible for probation or require a trial court to use talismanic phrases to ensure a defendant was so aware. Even before its 1992 decision in Little's case, the Nevada Supreme Court had applied another less stringent test than the apparent *per se* rule in *Meyer*, *Aswegan*, and *Skinner*. Specifically, as early as 1986, the court had held that "[i]t shall . . . be the duty of the trial court to review the entire record to determine whether the plea was valid, either by reason of the plea canvass itself or under a totality of the circumstances." *Bryant*, 721 P.2d at 368. *Bryant* explained:

> [W]hile we believe trial courts should in all circumstances conduct sufficient and thorough plea canvasses, as an appellate court reviewing the validity of a plea, we cannot be constrained to look only to the technical sufficiency of a plea canvas [*sic*] to determine whether a plea has been entered with a true understanding of the nature of the offense charged. As the United States Supreme Court has recognized, an appellate court should review the entire record, and look to the totality of the facts and circumstances of a defendant's case, to determine whether a defendant entered his plea with an actual understanding of the nature of the charges against him.

*Id.* at 367. *Bryant* further held that the Nevada Supreme Court "has never required the 'articulation of talismanic phrases' at plea hearings . . . [but has] instead been flexible in terms of permitting a district judge wide latitude in fulfilling the above requirements." *Id.*; *see also Iverson v. State*, 807 P.2d 1372, 1375 (Nev. 1991) ("A determination of whether the defendant understood the nature of the charge will be made by using the totality of the circumstances approach, whether the facts are contained in the plea canvas [*sic*] or at other stages of the proceedings."). It appears that the Nevada Supreme Court in Little's case based its decision not on *Meyer* and *Aswegan*, but on the "totality of the circumstances" test it espoused in *Bry-*

*ant*. The lower state court's application of *Bryant*'s "totality of the circumstances" test in denying Little's claim supports our conclusion. *See Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004) ("We review the last reasoned decision of the state court, which in this case was made by the state court of appeal. But because that court examined and adopted some of the trial court's reasoning, the trial court ruling is also relevant." (citation omitted)).

Indeed, before the Nevada Supreme Court's 1997 *Skinner* decision, discussed above, in 1995 the Nevada Supreme Court held that "the fact that the [state] district court did not affirmatively state that probation was not a sentencing option . . . was not prejudicial error because the district court took other steps to ensure that [defendant] was aware, even if by implication, that probation was not a sentencing option." *Riker v. State*, 905 P.2d 706, 710 (Nev. 1995). As does Little, the defendant in *Riker* also relied on *Aswegan* and *Meyer*. *Id.* at 710 (defendant "cites *Aswegan v. State*, 101 Nev. 760, 710 P.2d 83 (1985), and *Meyer v. State*, 95 Nev. 885, 603 P.2d 1066 (1979), in support of his argument that a failure to advise a defendant that probation is not a sentencing option renders a subsequent guilty plea ineffective."). The *Riker* court then stated that under these cases "[t]he issue . . . is whether the [state] district court adequately ensured that [defendant] was *aware* that probation was not a sentencing option . . . ." *Id.* (emphasis in original). The facts were:

> The State made the following declaration with [defendant] present:
> If the Court please, I wanted to make sure that Mr. Riker also understands that the maximum punishment is of course capital punishment, the death sentence, but he may also receive either life without the possibility of parole, which of course would be enhanced—that is doubled by the deadly weapon allegation—or a punishment of life with the possibility of parole, which also would be doubled as a

result of the deadly weapon enhancement, wherein the *minimum parole would be after twenty calendar years.* I want the Court to make sure that he fully understands those consequences. The district court then asked Riker if he understood the State's remarks, to which he replied, "Yes, I do."

In addition, the district court told Riker that the penalty for first degree murder can be "death, life with or without the possibility." Riker again stated that he understood these penalty options.

*Id.* (footnote omitted). On these facts, the *Riker* court held that "[b]ecause [defendant] understood the three options available for sentencing, he implicitly understood that other options were not available." *Id.* The court then concluded that "[c]onsidering the implication that probation was not included among the sentencing options and the fact that [defendant] was informed that the death sentence was likely, it was harmless error that he was not affirmatively informed that probation was not an option." *Id.* at 711.

Little's reliance on *Myers* is also inapposite since under the reasoning of that case the equal protection clause protects against arbitrary treatment. In that regard, the question is whether the state court arbitrarily withheld enforcement of the state-created right. As *Myers* explained: "A state should not be permitted to treat defendants differently . . . unless it has 'some rational basis, announced with reasonable precision' for doing so." *Id.* at 421 (citation omitted). Here, the state court denied Little relief after finding that Little had been "warned that he would have to spend ten years in prison at a bare minimum." This finding was anything but arbitrary. It was based on the record and the trial court's repeated assurances that Little in fact knew he was going to serve prison time.

**[12]** In sum, Little proceeds on the unfounded assumption that, under Nevada law, a defendant is granted relief when-

ever that defendant is not advised on the record that he or she is ineligible for probation; or that a trial court must use talismanic phrases to ensure a defendant is so aware. Little is not entitled to federal habeas relief on that basis. Rather, Little was required, but has failed, to show that the Nevada Supreme Court's misapplication somehow violated his federal constitutional rights. Little's plea comported with due process standards. He was properly advised of his rights and the relevant consequences of his plea, and there is nothing in the record to overcome the presumption that he pleaded voluntarily and intelligently.

## IV.

### *CONCLUSION*

For the reasons set forth above, Little is not entitled to habeas relief.

**AFFIRMED**.